**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— :
:
RED MOUNTAIN MEDICAL :
HOLDINGS, INC. f/k/a CDx, :
DIAGNOSTICS, INC., :
:
           Plaintiff, :
:
      v. :    No.  1:20-cv-02652-NRB
:
JOEL V. BRILL, M.D. and :
PREDICTIVE HEALTH, LLC, :
:
          Defendants. :
———————————————————————— :


## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

BAKER, DONELSON,
BEARMAN, CALDWELL &
BERKOWITZ, PC
By:  Andrew Hurst
      901 K Street, N.W., Suite 900
      Washington, D.C. 20001

FOLEY & LARDNER LLP
By:  Robert A. Scher
      Christopher A. DeGennaro
      90 Park Avenue
      New York, NY 10016-1314

*Attorneys for Defendants*
*Joel V. Brill, M.D. and Predictive*
*Health, LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................... 1

FACTUAL BACKGROUND ..................................................... 2

PROCEDURAL BACKGROUND................................................ 7

LEGAL STANDARD............................................................ 9

ARGUMENT ................................................................. 10

I.    Plaintiff's Claim for Breach of Contract Should Be Dismissed Because Plaintiff's Reading of the Agreements at Issue is Plainly Wrong as a Matter of Law. ................... 10

II.    Plaintiff has Failed to State a Claim for Actual or Constructive Fraud. ........................... 15

    a.   Plaintiff's Allegations of a Material Misrepresentation do not Satisfy Rule 9(b)'s Heightened Pleading Requirements. ............................................................. 16

    b.   Plaintiff's Allegations do not Establish a Fiduciary Relationship to Support a Claim for Constructive Fraud. .................................................. 18

III.   Plaintiff's Claim for Tortious Interference With Contract Fails to State A Claim Upon Which Relief can be Granted. ........................................................... 19

    a.   The Amended Complaint Fails to Allege Breach of Contract.................................. 20

    b.   The Amended Complaint Fails to Allege Intentional Procurement of Breach........... 20

IV.   Plaintiff Cannot State a Claim for Tortious Interference with Prospective Economic Advantage Because the Amended Complaint Concedes that Defendants' Purported Conduct was Motivated by Financial Gain..................................................... 22

V.    Plaintiff Has Failed to State a Claim for Unfair Competition Under New York Law Because the Amended Complaint is Devoid of any Allegations of Defendants Taking or Utilizing Plaintiff's Property. ....................................................... 24

VI.   Plaintiff's Tortious Interference Claims are Time Barred. ................................ 25

CONCLUSION................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abercrombie v. Andrew Coll.*,
438 F. Supp. 2d 243 (S.D.N.Y. 2006)......................................................................18

*Ad Lightning Inc. v. Clean.io, Inc.*,
No. 19-CV-7367, 2020 WL 4570047 (S.D.N.Y. Aug. 7, 2020)............................24

*Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*,
300 Fed. App'x 48 (2d Cir. 2008)...........................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)......................................................................................16

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005).....................................................................................10

*Caithness Long Island II, LLC v. PSEG Long Island LLC*,
No. 18-CV-4555, 2019 WL 6043940 (E.D.N.Y. Sept. 30, 2019) ..........................21

*Carvel Corp. v. Noonan*,
350 F.3d 6 (2d Cir. 2003).........................................................................................22

Carvel Corp. v. Noonan,
818 N.E.2d 1100 (N.Y. 2004)............................................................................22, 23

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
547 F.3d 115 (2d Cir. 2008).....................................................................................23

*Compania Sud–Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*,
785 F. Supp. 411 (S.D.N.Y. 1992) ..........................................................................18

*Debary v. Harrah's Operating Co., Inc.*,
465 F. Supp. 2d 250 (S.D.N.Y. 2006)......................................................................14

*Decker v. Massey–Ferguson, Ltd.*,
681 F.2d 111 (2d Cir.1982)......................................................................................16

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d Cir. 1987)............................................................................15, 17

4852-8171-0044.1

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
    105 N.E.3d 301 (N.Y. 2018) ................................................................................24

*ESI, Inc. v. Coastal Power Prod. Co.*,
    995 F. Supp. 419 (S.D.N.Y. 1998) .......................................................................18

*Faktor v. Yahoo! Inc.*,
    No. 12 CIV. 5220 (RA), 2013 WL 1641180 (S.D.N.Y. Apr. 16, 2013)...........18, 19

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
    No. 12-cv-7372 (LJL), 2020 WL 5518146 (S.D.N.Y. Sept. 14, 2020) ..................17

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co. Inc.*,
    485 N.E.2d 208 (N.Y. 1985).................................................................................14

*Frydman v. Verschleiser*,
    172 F. Supp. 3d 653 (S.D.N.Y. 2016)..................................................................24

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
    206 F. Supp. 3d 869 (S.D.N.Y. 2016)..................................................................25

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)...................................................................................10

*High Falls Brewing Co., LLC v. Boston Beer Corp.*,
    513 Fed. App'x 12 (2d Cir. 2013)........................................................................21

*ITC Ltd. v. Punchgini, Inc.*,
    880 N.E.2d 852 (N.Y. 2007).................................................................................24

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006)...................................................................19, 20, 22

*Kronos, Inc. v. AVX Corp.*,
    612 N.E.2d 289 (1993).........................................................................................25

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
    10 F. Supp. 3d 504 (S.D.N.Y. 2014)....................................................................15

*Maniolos v. U.S.*,
    741 F. Supp. 2d 555 (S.D.N.Y. 2010), *aff'd*, 469 F. App'x 56 (2d Cir. 2012)........10, 11

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.*,
    693 F. Supp. 2d 387 (S.D.N.Y. 2010)............................................................15, 16

*Menominee Indian Tribe v. U.S.*,
    136 S.Ct. 750 (2016)............................................................................................26

4852-8171-0044.1

*Monex Fin. Servs. Ltd. v. Dynamic Currency Conversion, Inc.*,
859 N.Y.S.2d 904 (N.Y. Sup. Ct. 2008), *aff'd as modified*, 878 N.Y.S.2d 432
(N.Y. App. Div. 2009) ...................................................................................................25

*Nghiem v. U.S. Dep't of Veterans Affairs*,
451 F. Supp. 2d 599 (S.D.N.Y. 2006), *aff'd*, 323 F. App'x 16 (2d Cir. 2009) .......................25

*Oppenheimer & Co., Inc. v. Trans Energy, Inc.*,
946 F. Supp. 2d 343 (S.D.N.Y. 2013)..................................................................................10

*Pasternack v. Lab. Corp. of Am. Holdings*,
59 N.E.3d 485 (N.Y. 2016)..................................................................................................17

*Prospect Funding Holdings, LLC v. Vinson*,
256 F. Supp. 3d 318 (S.D.N.Y. 2017)...................................................................................21

*Roche Diagnostics GmbH v. Enzo Biochem, Inc.*,
992 F. Supp. 2d 213 (S.D.N.Y. 2013)...................................................................................21

*Rosemeier v. Schenker Int'l, Inc.*,
895 F. Supp. 65 (S.D.N.Y. 1995) ........................................................................................25

*Rounds v. Beacon Assocs. Mgmt. Corp.*,
09 Civ. 6910, 2009 WL 4857622 (S.D.N.Y. Dec. 14, 2009)..................................................11

*Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*,
672 F.2d 1095 (2d Cir. 1982)..............................................................................................24

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010)......................20

*Schneider v. Pearson Educ., Inc.*,
No. 12 CIV. 6392 JPO, 2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013) ..............................15, 16

*Senior Health Ins. Co. of Pa. v. Beechwood Re Ltd.*,
345 F. Supp. 3d 515 (S.D.N.Y. 2018)..................................................................................15

*Shaffer Smith, 2424, LLC v. Foster*,
168 F. Supp. 3d 654 (S.D.N.Y. 2016)..................................................................................17

*Shipping & Fin., Ltd. v. Aneri Jewels LLC*,
No. 19 CIV. 1293 (NRB), 2019 WL 5306979 (S.D.N.Y. Oct. 21, 2019) ..............................14

*In re Signature Apparel Grp.*,
577 B.R. 54 (Bankr. S.D.N.Y 2017)....................................................................................26

*Solow v. Stone*,
994 F. Supp. 173 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998)................................22

iv

*Spinnato v. Unity of Omaha Life Ins. Co.*,
 322 F. Supp. 3d 377 (E.D.N.Y. 2018) ................................................................. 15

*State of Cal. Pub. Emps.' Ret. Sys. v. Shearman & Sterling*,
 741 N.E.2d 101 (N.Y. 2000) ................................................................................ 14

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
 425 F.3d 119 (2d Cir. 2005) ................................................................................ 12

*Sucher v. Goldman Sachs Grp., Inc.*,
 Index No. 653803/2014, 2016 N.Y. Misc. LEXIS 1117 (N.Y. Sup. Ct. N.Y.
 Cnty. Apr. 7, 2016) ............................................................................................. 25

*Synovus Bank of Tampa Bay v. Valley Nat'l Bank*,
 487 F. Supp. 2d 360 (S.D.N.Y. 2007) ................................................................. 11

*Taboola, Inc. v. Ezoic Inc.*,
 No. 17CIV9909, 2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020) ............................ 19

*In re Terrorist Attacks on Sept. 11, 2001*,
 714 F.3d 118 (2d Cir. 2013) .................................................................................. 9

*Thome v. Alexander & Louisa Calder Found.*,
 890 N.Y.S.2d 16 (N.Y. App. Div. 2009) ....................................................... 23, 25

*Thompson v. Bosswick*,
 855 F. Supp. 2d 67 (S.D.N.Y. 2012) ................................................................... 22

*Walsh v. Rigas*,
 No. 17 CIV. 4089 (NRB), 2019 WL 294798 (S.D.N.Y. Jan. 23, 2019) ................ 12

*Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*,
 No. 14-CV-7529 (RJS), 2016 WL 5414979 (S.D.N.Y. Mar. 18, 2016) ................ 21

*Wurtsbaugh v. Banc of Am. Sec. LLC*,
 05 Civ. 6220, 2006 WL 1683416 (S.D.N.Y. June 20, 2006) ................................ 11

**Other Authorities**

CPT Overview and Code Approval, American Medical Association,
 https://www.ama-assn.org/practice-management/cpt/cpt-overview-and-code-approval
 (last visited February 2, 2021) ............................................................................... 3

Fed. R. Civ. P.
 Rule 9(b) ........................................................................... 1, 15, 16, 17
 Rule 11 ....................................................................................... 8, 9
 Rule 12(b)(6) ................................................................................. *passim*

Defendants, Joel V. Brill, M.D. ("Dr. Brill") and Predictive Health, LLC ("Predictive Health") (collectively, the "Defendants"), by and through their attorneys, submit this memorandum of law in support of their Motion to Dismiss the First Amended Complaint of Plaintiff Red Medical Holdings, Inc. ("Red Mountain" or "Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

## PRELIMINARY STATEMENT

Recognizing the deficiencies in the Original Complaint (Docket Entry No. ("DE") 4), Plaintiff has changed its theory of the relevant parties—replacing Predictive Health for EBG Advisors, Inc. ("EBGA") and National Health Advisors, LLC ("NHA") (together with Dr. Brill, the "Original Defendants")—and reasserted its claims for breach of contract, actual and constructive fraud, tortious interference, and unfair competition.  However, the conclusory and strained allegations on which these claims are based lay bare that Plaintiff's lawsuit is nothing more than spiteful payback for the role of Dr. Brill's advice in the due diligence process that led two investment firms to walk away from proposed deals to fund Plaintiff's medical technology business.

As set forth below, Plaintiff fails to state a claim for (1) breach of contract as a third-party beneficiary since Plaintiff does not and cannot allege any facts showing, or from which to infer, that the contracts at issue intended an immediate benefit to Plaintiff, and because the clear and unambiguous language of each contract is to the contrary; (2) actual or constructive fraud since Plaintiff's allegations fall short of Fed. R. Civ. P 9(b)'s heightened pleading requirement, and otherwise fail to establish any fiduciary relationship between Defendants and Plaintiff; (3) tortious interference with contract since Plaintiff fails to allege any non-conclusory facts sufficient to establish breach of a contract or intentional procurement thereof; (4) tortious interference with prospective economic advantage because the Amended Complaint concedes

1

that Defendants' conduct was not motivated solely by malice; and (5) unfair competition under New York law to the extent the Amended Complaint is devoid of any allegations of fact that Defendants misappropriated Plaintiff's medical technology.  Further, Plaintiff's tortious interference claims should be dismissed as time barred since the three-year statutory period has elapsed.

For these reasons, the Court should grant the instant motion and dismiss the Amended Complaint in its entirety with prejudice.

## FACTUAL BACKGROUND

This action arises out of two failed financing deals in 2015 and 2016, through which Plaintiff sought funding from KKR (a global investment firm that manages multiple alternative asset classes) and Accelmed (a global group of funds investing and acquiring control in HealthTech companies) respectively, to commercialize Plaintiff's novel esophageal cancer detection technology, Wide Area Transepithelial Sampling with 3D Computer Assisted Tissue Analysis ("WATS3D").

As set forth in the Amended Complaint, Plaintiff developed WATS3D in or around the year 2000, and progressed to the point of needing additional financing by January 2015, including to fund and expedite the large clinical trials necessary for adoption by the American Society of Gastrointestinal Endoscopy Standard of Practice Guideline (the "Guideline").  *See* Am. Compl. ¶¶ 2, 9-10.  Plaintiff's stated goal was for WATS3D to be designated as the "official standard of care" by the Guideline.  *Id.* ¶ 2.  Accordingly, in January 2015, Plaintiff engaged Houlihan Lokey (an investment bank), which connected Plaintiff and KKR.  *See id.* ¶ 46. Plaintiff alleges that it had numerous meetings with KKR in 2015, which culminated in a Memorandum of Terms, dated May 18, 2015 (the "KKR Term Sheet").  *See id.* ¶ 48.  According to Plaintiff, the KKR Term Sheet was binding as to certain limited terms, including

2

"Confidentiality," but was preliminary as to other terms, including $35 million in fundraising and a post-funding valuation of $125 million.  *See id.*  Plaintiff alleges that KKR provided Plaintiff with a checklist of due diligence items to be completed before KKR would agree to proceed under the KKR Term Sheet, including an independent review of the CPT coding used by Plaintiff to bill insurance companies for its services.  *See id.* ¶¶ 11-12, 48-49.[1]

Plaintiff alleges that KKR engaged Dr. Brill to act as its consultant with respect to Plaintiff's CPT coding practices in furtherance of this independent review.  *See* Am. Compl. ¶ 13.  And according to Plaintiff, Dr. Brill entered into an agreement, dated May 19, 2015, setting out the terms of the KKR consultancy.  *Id.*[2]  Contrary to Plaintiff's representations that Dr. Brill entered into the KKR Consulting Agreement for Plaintiff's benefit, *see, e.g.*, Am. Compl. ¶¶ 14, 68, under the KKR Consulting Agreement, Dr. Brill agreed to "assist [KKR] with the review and analysis of the gastroenterology field (the "Project") concerning a potential investment . . . in companies . . . as identified by KKR in writing from time to time (such identified company, together with its affiliates, a 'Target Company.')"  Hurst Decl., Ex. 1 § 1.

---

[1]    According to Plaintiff, CPT (short for "Current Procedural Terminology") codes are widely used by healthcare providers and insurance companies as the basis for reimbursement for diagnostic and treatment services in the United States.  *See* Am. Compl. ¶¶ 41-42.  As explained by the American Medical Association, CPT codes provide doctors and health care providers a uniform language to report and bill medical services and procedures.  *See* CPT Overview and Code Approval, American Medical Association, https://www.ama-assn.org/practice-management/cpt/cpt-overview-and-code-approval (last visited February 2, 2021).

[2]    A true and correct copy of Dr. Brill's May 19, 2015 consulting agreement with KKR (the "KKR Consulting Agreement") is attached to the Declaration of Andrew Hurst ("Hurst Decl.") as Exhibit 1.  Although Plaintiff purports to summarize provisions of the KKR Consulting Agreement, tellingly, Plaintiff did not attach a copy of the agreement to the Amended Complaint.  And notably, Plaintiff refers to the KKR Consulting Agreement as an "NDA," presumably to lend credence to Plaintiff's deficient claims.  Am. Compl. ¶ 13.

4852-8171-0044.1

The specific terms of the KKR Consulting Agreement reflect its inherent purpose—to assist KKR in its investment business.  Concerning conflicts of interest, the KKR Consulting Agreement (1) required Dr. Brill to seek an advanced written waiver from KKR before accepting any engagement for another client that "would reasonably be expected to (i) give rise to a conflict of interest . . . or (ii) result in the release of trade secrets or other proprietary or confidential information relating to the Project or KKR," and (2) prohibited Dr. Brill from assisting another client, including by furnishing information, with the intent or effect of developing a transaction with one of KKR's target investments.  *Id.* § 4  And, regarding confidentiality, the KKR Consulting Agreement generally required that Dr. Brill use any confidential information obtained "solely for the purpose of the Project."  *See id.* § 6.

Indeed, the plain language of the KKR Consulting Agreement required Dr. Brill to perform consulting services in accordance with the direction, and for the benefit, of KKR.  *See id.* § 4.  And since KKR was the beneficiary of the KKR Consulting Agreement, the relevant conflicts and confidentiality provisions were designed to protect KKR and its investment business, including pursuing transactions with "Target Companies."  Significantly, the KKR Consulting Agreement contains no clause, provision, section, chapter, or article, under which Dr. Brill agreed to provide any consulting services, promised to perform, or made any representations at all for the benefit of any third parties.

Nevertheless, Plaintiff alleges that under the KKR Consulting Agreement, Dr. Brill agreed to provide KKR with coding advice "not only for the benefit of KKR but also for the benefit of [Plaintiff], who would be receiving the much-needed financing at the end of the due dilligence period."  Am. Compl. ¶ 14.  In an attempt to buttress this totally unsupported interpretation of the KKR Consulting Agreement, Plaintiff further alleges, contrary to the words

4852-8171-0044.1

on the page, that the KKR Consulting Agreement required Dr. Brill to expressly represent that (1) he had no conflicts of interest with Plaintiff and (2) would use Plaintiff's confidential information *only* for purposes of counseling KKR in "the contemplated transaction." *Id.* ¶ 64. And, shockingly, Plaintiff states that "the entire purpose of the [KKR Consulting Agreement] was to benefit Plaintiff." *Id.* ¶ 68.

Regarding the advice which Dr. Brill purportedly provided to KKR under the KKR Consulting Agreement, Plaintiff alleges that Dr. Brill raised concerns with Plaintiff's CPT coding practices, which KKR in turn raised with Plaintiff. *See* Am. Compl. ¶¶ 17, 53-54. Specifically, Plaintiff alleges that Dr. Brill pointed out that one of the laboratory testing procedures that Plaintiff routinely performed, which was being coded under CPT 88361, should have been coded under CPT 88340—which was reimbursed at a lower level. *See id.* Plaintiff alleges that at the time KKR raised this concern, Plaintiff believed that Dr. Brill was mistaken in good faith, including because he was a gastroenterology (and not pathology) coding expert. *See id.* ¶ 54. Plaintiff further alleges that, to allay KKR's concerns, it retained its own coding consultant, which wrote an extensive report agreeing that CPT 88361 was the correct CPT code for Plaintiff's routine procedure. *See id.* ¶ 58. Nevertheless, according to Plaintiff, KKR delayed the financing deal for an extended period of time due to Dr. Brill's concerns. *See id.* ¶ 60.

Meanwhile, Plaintiff allegedly pursued another potential financing transaction with Accelmed. Am. Compl. ¶ 83. According to Plaintiff, like KKR, Accelmed engaged Dr. Brill (via his consulting firm, Predictive Health) pursuant to a consulting agreement, dated November 16, 2016. *See id.* ¶ 23; Hurst Decl., Ex. 2 ("Accelmed Consulting Agreement").[3] Under the

---

[3]     Again, although Plaintiff purports to summarize provisions of the Accelmed Consulting Agreement, a copy of the agreement is not attached to the Amended Complaint.

Accelmed Consulting Agreement, Predictive Health agreed that it would provide consulting services to Accelmed, via Dr. Brill, on "health care reimbursement trends and strategy, recommendations, regarding potential interventions, the impact of coding, coverage policies and payment rates on practices and providers, and other services as mutually agreed."  Hurst Decl., Ex. 2 § 1 & Ex. A.  Predictive Health also agreed to keep confidential any materials it received pursuant to the engagement, including any materials provided by third parties, *see id.* § 3(B), (D), and certified that it had no outstanding agreements or obligations that would conflict with providing consulting services to Accelmed, *see id.* § 5.

Like the KKR Consulting Agreement, the Accelmed Consulting Agreement clearly and unambiguously provides that Predictive Health agreed to perform consulting services in accordance with the direction, and for the benefit, of Accelmed only.  (It too confers no benefits whatsoever to any third parties, except that it requires Predictive Health to maintain confidentiality of third-party materials generally).

Plaintiff states that Accelmed sent Red Mountain a term sheet on November 30, 2016, valuing Plaintiff at $100 million post-funding (the "Accelmed Term Sheet").  Am. Compl. ¶ 83. According to Plaintiff, Dr. Brill then performed a similar evaluation of the CPT coding used by Plaintiff, which had not changed, and alerted Accelmed to the same concerns with CPT Code 88361.  *See id.* ¶¶ 23, 84.  Ultimately, Accelmed declined to fund Red Mountain in December 2016.  *See id.* ¶ 86.[4]

Without any explanation or underlying factual allegations, Plaintiff states that, in 2018, it learned that Dr. Brill had a conflict of interest during his consultancies with KKR and Accelmed.

---

[4]    Plaintiff states that it ultimately obtained funding from Galen Management, LLC in 2017 pursuant to less favorable terms, including because Plaintiff's creditors were losing patience with respect to Plaintiff's outstanding debts.  *Id.* ¶ 91.

*See* Am. Compl. ¶¶ 81, 96.  Plaintiff baldly alleges, on information and belief, that Dr. Brill had

an extensive and long-standing engagement with Plaintiff's competitors, Mauna Kea and

NinePoint Medical (the "Competitors"), to petition the American Gastroenterology Association

and the American Medical Association for a CPT code for their esophageal cancer detection

technologies.  *See id.* ¶¶ 8, 16, 86, 96.  Plaintiff speculates, without any corroborating factual

allegations, that Dr. Brill concealed his work for the Competitors from KKR and Accelmed, and

sabotaged the KKR and Accelmed Term Sheets with intentional misstatements and false

representations of fact regarding Plaintiff's CPT coding practices.  *See id.* ¶¶ 16, 8, 73.  And, to

be sure the Amended Complaint has all conspiratorial bases covered, Plaintiff surmises that (i)

Dr. Brill sabotaged the KKR and Accelmed Term Sheets as part of a conspiracy with the

Competitors, or on his own, and (ii) was compensated by the Competitors or had a financial

arrangement with them such that it was in his interest to sabotage their competition.  *See id.* ¶ 74.

Needless to say, Plaintiff's conclusory allegations are decidedly insufficient to support the claims

asserted in the Amended Complaint.

## PROCEDURAL BACKGROUND

Plaintiff commenced this action against EBG Advisors, Inc. ("EBGA"), National Health

Advisors, LLC ("NHA"), and Dr. Brill (collectively, the "Original Defendants") in the Supreme

Court of the State of New York on December 13, 2019 by filing a Summons with Notice

pursuant to the New York Civil Practice Law & Rules ("CPLR").  *See* DE 3.  The Original

Defendants removed the action to this Court on the basis of diversity jurisdiction on March 31,

2020.  *See id.*  Nearly three months later, Plaintiff filed the Original Complaint.  *See* DE 11.

There, Plaintiff alleged that Dr. Brill performed consulting services in connection with the KKR

and Accelmed Term Sheets through EBGA and NHA (consulting firms affiliated with the

national law firm Epstein Becker & Green).  *See id.*  Plaintiff presumed, without any supporting

factual allegations, that EBGA and NHA were retained at the behest of Epstein Becker & Green (KKR's counsel in connection with the KKR Term Sheet), and that EBGA and NHA in turn retained Dr. Brill.  *See id.*  In response to the Original Complaint, pursuant to the Court's individual rules, the Original Defendants submitted a pre-motion conference letter setting forth the principal bases for (i) Dr. Brill's proposed motion to dismiss under Fed. R. Civ. P. 12(b)(6) and (ii) EBGA's and NHA's proposed motion for summary judgment in lieu of an answer.  *See* DE 19.

With respect to their proposed motion, EBGA and NHA asserted that they did not retain Dr. Brill in connection with the KKR or Accelmed Term Sheets and were prepared to submit incontrovertible documentary evidence to that effect.  *See id.*  In opposition, Plaintiff argued, among other things, that EBGA's and NHA's proposed motion was premature.  *See* DE 20. Plaintiff asserted that it would submit an affidavit by Plaintiff's CEO that he "was informed by KKR that [EBGA and NHA] were, in fact, involved," creating an issue of material fact.  *Id.* at 3.

Over Plaintiff's opposition, the Court waived its pre-motion conference requirement and granted Defendants leave to file their proposed motions, including EBGA's and NHA's proposed summary judgment motion in lieu of an answer.  *See* DE 21.  The Court advised Plaintiff that it should assert any allegations to cure the issues raised by EBGA and NHA consistent with Fed. R. Civ. P. 11 in an amended pleading on or before September 24, 2020.  *See id.*  Thereafter, on September 24, 2020, Plaintiff's counsel emailed undersigned counsel as follows:

> With respect to your proposed motion for summary judgment, we have made several attempts in the last couple of weeks to determine, based on the information available to us, whether KKR engaged Dr. Brill directly through his independent consulting company (and not, as we alleged, through EBG Advisors/NHA (the "Entity Defendants")).  Unfortunately, we have not been able to do so.

8

> We thought it made the most sense (and might obviate the need for unnecessary motion practice) if you would be willing to provide us with whatever evidence you have which demonstrates that the Entity Defendants were not involved in the due diligence on the KKR/Red Mountain transaction, including the retainer letter(s) through which Brill or his entity was engaged.  We would be willing to amend the complaint to drop the Entity Defendants if we could satisfy ourselves on that point, but we have been unable to gain any clarity on this issue.

Hurst Decl., Ex. 3, Jessica Caterina's September 24, 2020 email to Christopher DeGennaro.  In response, undersigned counsel provided Plaintiff's lawyers with—among other things—the KKR and Accelmed Consulting Agreements, *see* Hurst Decl., Ex. 4, Christopher DeGennaro's September 24, 2020 email to Jessica Caterina, which should have made plain that (1) EBGA and NHA were improper parties and (2) Defendants never agreed to perform any consulting services for Plaintiff's benefit.

Nevertheless, and despite the Court's Rule 11 warning, Plaintiff cobbled together the Amended Complaint at the eleventh hour based on a new theory as to the relevant parties, misrepresentations as to the terms of the KKR and Accelmed Consulting Agreements, and conjecture.  Accordingly, Defendants filed a pre-motion conference letter setting forth the principle bases for the instant motion.  *See* DE 23.  The Court conducted a telephonic pre-motion conference on November 6, 2020, at which time the Court granted Defendants leave to make their motion.  *See* November 6, 2020 Electronic Minute Entry.

## LEGAL STANDARD

On a motion to dismiss brought pursuant to Rule 12(b)(6), the Court may dismiss the complaint if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) "'To survive a motion to dismiss'" on this basis, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 122 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Although a court must accept as true all of the allegations contained

in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris*

*v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and citation omitted).

## **ARGUMENT**

I.   **Plaintiff's Claim for Breach of Contract Should Be Dismissed Because Plaintiff's Reading of the Agreements at Issue is Plainly Wrong as a Matter of Law.**

Plaintiff's third-party claim for breach of contract fails to the extent it is based on an

interpretation of the KKR and Accelmed Consulting Agreements that is utterly inconsistent with

their clear and unambiguous terms.  Notwithstanding Plaintiff's broad characterizations,

according to the plain language of the KKR and Accelmed Consulting Agreements, Dr. Brill and

Predictive Health were retained to provide consulting services for the benefit of KKR and

Accelmed and no one else.  Accordingly, Plaintiff's breach of contract claim—set forth in Count

I of the Amended Complaint—must be dismissed with prejudice.

As a general matter, in deciding a motion to dismiss brought pursuant to Rule 12(b)(6),

"'the Court must limit its analysis to the four corners of the complaint.'"  *Maniolos v. U.S.*, 741

F. Supp. 2d 555, 560 (S.D.N.Y. 2010), *aff'd*, 469 F. App'x 56 (2d Cir. 2012) (citation omitted).

However, the Court may "consider documents attached to the complaint as an exhibit or

incorporated in the complaint by reference."  *Id.*  Here, the Amended Complaint plainly

incorporates the KKR and Accelmed Consulting Agreements.  Accordingly, the Court can and

should consider them in deciding the instant motion.  *See, e.g.*, *Broder v. Cablevision Sys. Corp.*,

418 F.3d 187, 196 (2d Cir. 2005) ("Insofar as the complaint relies on the terms of [the

agreement], therefore, we need not accept its description of those terms, but may look to the

agreement itself."); *Oppenheimer & Co., Inc. v. Trans Energy, Inc.*, 946 F. Supp. 343, 344

(S.D.N.Y. 2013) ("Where the claim is for breach of contract, as here, the complaint is deemed to

incorporate the alleged contract by reference because the alleged contract is integral to the claim.").

And indeed, as relevant here, where there is no ambiguity to a contract and the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may be resolved on a motion to dismiss. *See Maniolos*, 741 F. Supp. 2d at 567; *see also Rounds v. Beacon Assocs. Mgmt. Corp.*, 09 Civ. 6910, 2009 WL 4857622, at *3 (S.D.N.Y. Dec. 14, 2009); *Wurtsbaugh v. Banc of Am. Sec. LLC*, 05 Civ. 6220, 2006 WL 1683416, at *5 (S.D.N.Y. June 20, 2006) ("[I]f an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms, and a breach of contract claim may be dismissed on a Rule 12(b)(6) motion." (internal quotation marks and citation omitted)).  Accordingly, the Court should construe the clear and unambiguous terms as intended by the parties and dismiss Plaintiff's bald third-party breach of contract claim.

Under New York law, for a third-party beneficiary to succeed on a breach of contract claim, the party "must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his or her benefit, and (3) that the benefit to him or her is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Synovus Bank of Tampa Bay v. Valley Nat'l Bank*, 487 F. Supp. 2d 360, 368 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).  "While the third-party beneficiary does not have to establish that it is explicitly mentioned in the contract, New York law requires that the parties' intent to benefit a third-party be shown on the face of the contract." *Id.*  And, "'[a]bsent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to interpret circumstances to

construe such an intent.'"  *Walsh v. Rigas*, No. 17 CIV. 4089 (NRB), 2019 WL 294798, at *15 (S.D.N.Y. Jan. 23, 2019) (citation omitted).[5]

Here, the clear and unambiguous terms of the KKR and Accelmed Consulting Agreements make plain that Plaintiff was not an intended beneficiary.  The plain terms of the KKR and Accelmed Consulting Agreements clearly and unambiguously provide that Dr. Brill and Predictive Health were, in each case, engaged to perform industry-specific consulting services for KKR and Accelmed and no one else, including more specific projects as defined by KKR and Accelmed on a case-by-case basis.

Under the Accelmed Consulting Agreement, Predictive Health agreed to provide services to Accelmed, defined as "consulting on health care reimbursement trends and strategy . . . the impact of coding . . . and other services mutually agreed" by the parties.  Hurst Decl., Ex. 2 § 1 & Ex. A.  Under the KKR Consulting Agreement, Dr. Brill agreed to "assist [KKR] and its affiliates with the review and analysis of the gastroenterology field . . . concerning a potential investment . . . in companies in such industry as identified by KKR in writing from time to time."  Hurst Decl., Ex. 1 § 1.  The agreements do not otherwise identify anyone else for whom Dr. Brill was engaged to perform services.

Contrary to Plaintiff's descriptions, the conflicts and confidentiality provisions are unavailing.  The relevant conflicts provisions in the KKR Consulting Agreement simply required Dr. Brill to obtain a waiver of any potential conflict from KKR before accepting a potentially conflicting engagement, and prohibited Dr. Brill from helping any other client develop a

---

[5]      "[D]ismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant, or where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant."  *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (citations omitted).

transaction with one of KKR's investment targets. *See id.* § 4. The confidentiality provisions of the KKR Consulting Agreement required Dr. Brill to use confidential information for purposes of the consultancy only and keep such material in strict confidence. *See id.* § 6. The same is true of the Accelmed Consulting Agreement, except that it imposed an obligation upon Predictive Health to keep in confidence any confidential or proprietary information received from "third parties," without any context as to the circumstances in which Predictive Health would receive such information or further detail as to the "third-parties." Hurst Decl., Ex. 2 § (3)(D).[6] Accordingly, these provisions were intended to protect KKR's and Accelmed's investment businesses.

The contract language relied upon in Plaintiff's breach of contract claim, as it exists in the actual KKR and Accelmed Consulting Agreements, differs dramatically from the generic descriptions set forth in the Amended Complaint. Throughout the Amended Complaint, Plaintiff paints with a broad brush, alleging that Plaintiff was necessarily a third-party beneficiary of the KKR and Accelmed Consulting Agreements without referencing specific contract language. *See, e.g.*, Am. Compl. ¶ 14 ("per the terms of the KKR Consulting Agreement," Dr. Brill was to provide coding advice "not only for the benefit of KKR but also for the benefit of [Plaintiff], who would be receiving the much-needed financing at the end of the due diligence process."). As noted, Plaintiff even alleges that the "entire purpose of [the KKR Consulting Agreement] was to benefit [Plaintiff] by 'checking off' the final due diligence process so [Plaintiff] could obtain financing." *Id.* ¶ 68. Plaintiff makes similar claims with respect to the Accelmed Consulting

---

[6]     Even if this provision were construed to benefit a third party, any such benefit is incidental since the primary beneficiary of the agreement, and indeed this provision, is Accelmed as an investment firm considering opportunities to fund or take control of third parties.

4852-8171-0044.1

Agreement, including alleging that it "contained similar provisions meant for the protection and benefit of [Plaintiff]." *Id.* ¶ 23.

The differences between Plaintiff's generic descriptions of the pertinent contract terms, and their actual, unambiguously plain language are fatal to Plaintiff's contract claim. Contrary to Plaintiff's sweeping claims, neither agreement identifies Plaintiff as a beneficiary, or otherwise indicates that Defendants intended their performance under the agreements to benefit Plaintiff— even incidentally.[7] Plaintiff's suggestion otherwise turns consulting work generally on its head, and it is totally inconsistent with the clear terms of the KKR and Accelmed Consulting Agreements. *See State of Cal. Pub. Emps.' Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 105 (N.Y. 2000) (holding that plaintiff was not a third-party beneficiary of its counterparty's contract with counsel).

For all of the reasons set forth above, Plaintiff's breach of contract claim should be dismissed with prejudice. *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 300 Fed. App'x 48, 49 (2d Cir. 2008) (dismissing a breach of contract claim on a motion to dismiss under Rule 12(b)(6) where the terms of the contract at issue were clear and unambiguous); *Shipping & Fin., Ltd. v. Aneri Jewels LLC*, No. 19 CIV. 1293 (NRB), 2019 WL 5306979, at *4 (S.D.N.Y. Oct. 21, 2019) (same).

---

[7] Nor does, or can, the Amended Complaint establish that no one other than Plaintiff can recover under the KKR and Accelmed Consulting Agreements. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co. Inc.*, 485 N.E.2d 208, 212 (N.Y. 1985) (requiring that a third party show that no one other than the third party can recover if the promisor breaches the contract where the contract does not clearly reflect an intent to benefit the party); *see also Debary v. Harrah's Operating Co., Inc.*, 465 F. Supp. 2d 250, 263-64 (S.D.N.Y. 2006). Here, breaches of the consulting agreements are clearly enforceable by KKR and Accelmed respectively.

14

II.    **Plaintiff has Failed to State a Claim for Actual or Constructive Fraud.**

Plaintiff has not and cannot state a claim for actual or constructive fraud since Plaintiff's allegations in this regard are not sufficiently particular and are entirely conclusory.  Further, Plaintiff has not and cannot allege a fiduciary relationship between Defendants and Plaintiff. Accordingly, Plaintiff's fraud claims—set forth in Counts II and III of the Amended Complaint should be dismissed with prejudice.

A claim for fraud under New York law requires "[1] a material misrepresentation of a fact, [2] knowledge of its falsity, [3] an intent to induce reliance, [4] justifiable reliance by the plaintiff and [5] damages." *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 514 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).  In addition, any fraud claim must also satisfy "Rule 9(b), which requires that a plaintiff "state with particularity the circumstances constituting fraud." *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 393 (S.D.N.Y. 2010).  Constructive fraud claims must also be pleaded with particularity.  *See Senior Health Ins. Co. of Pa. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 530 (S.D.N.Y. 2018); *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 404 (E.D.N.Y. 2018) ("Courts in the Second Circuit have traditionally applied Rule 9(b) to constructive fraud as it closely resembles the legal elements of a fraud claim.").

Unlike pleadings analyzed solely under Rule 12(b)(6), "Rule 9(b) pleadings cannot be based upon information and belief." *Schneider v. Pearson Educ., Inc.*, No. 12 CIV. 6392 JPO, 2013 WL 1386968, at *4 (S.D.N.Y. Apr. 5, 2013).[8]  In order to comply with Rule 9(b), a

---

[8]    There is a recognized exception to this rule, however, as to facts peculiarly within the opposing party's knowledge, in which case the allegations must be accompanied by a statement of the facts upon which the belief is based. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (setting forth the exception and its usual context—shareholder derivative action in which complaining stockholders know little of the internal workings of the subject corporation).

15

complaint alleging fraud "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at *4 (internal quotation marks and citation omitted). In addition, a plaintiff must allege facts giving rise to a strong inference of fraudulent intent, including by "'(1) alleging facts to show that defendant [] had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Marketxt Holdings Corp.*, 693 F. Supp. 2d at 393 (citation omitted). Here, the Amended Complaint does not state with particularity the circumstances constituting the alleged fraud, or allege facts giving rise to a strong inference of fraudulent intent.

### a. Plaintiff's Allegations of a Material Misrepresentation do not Satisfy Rule 9(b)'s Heightened Pleading Requirements.

Far from specifying Dr. Brill's purported fraudulent statements or representations, or alleging their time and place, Plaintiff asserts bald conclusions of conspiracy and sabotage, which are decidedly insufficient to state a claim under Rule 9(b)'s heightened pleading requirement. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (reciting the well-settled rule that "allegations that are conclusory or unsupported by factual assertions are insufficient" under Rule 9(b)); *see also Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 119 (2d Cir.1982) (explaining that conclusory allegations of fraud are not enough to comply with Rule 9(b)). With regard to Dr. Brill's purported conflict of interest, in addition to failing to allege any facts whatsoever from which the Court can reasonably infer that Dr. Brill was covertly working for the Competitors, Plaintiff altogether fails to identify the manner, time or place that it purportedly learned of Dr. Brill's engagement with the Competitors. Am. Compl. ¶¶ 81, 86. Amazingly, Plaintiff's brazen allegations of conspiratorial subterfuge are based on

"information and belief" only. *Id.* ¶¶ 16-18, 23, 73, 74, 82.  Such speculative and unsupportable allegations are inadequate to allege any conflict of interest by Dr. Brill.[9]

Moreover, Plaintiff has not alleged with sufficient particularity any fraudulent misstatements or misrepresentations made by Dr. Brill regarding Plaintiff's CPT coding practices, or facts giving rise to a strong inference of fraudulent intent.  Rather, Plaintiff alleges generally that (1) it originally believed that Dr. Brill's concerns regarding Plaintiff's CPT coding were based on a good faith difference of opinion, *see* Am. Compl. ¶ 54; and (2) ultimately decided that they were not in good faith because Plaintiff "learned" that Dr. Brill had a long-standing engagement with the Competitors, *see id* ¶ 96.  Indeed, Plaintiff offers no detailed allegations about Dr. Brill's statements or how they were fraudulent.  And, significantly, Plaintiff altogether fails to set forth any ***factual allegations*** from which the Court can reasonably infer that Defendants made representations to KKR or Accelmed, with the intent that such representations be communicated to and relied upon by Plaintiff.  *See Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 492 (N.Y. 2016) (noting that an indirect statement can establish a fraud claim only when the statement was made with the intent that it be communicated to the plaintiff and that the plaintiff rely on it); *see also Fin. Guar. Ins. Co. v. Putnam Advisory Co.,*

---

[9]        Although, as noted, there is a recognized exception to the rule that fraud may not be pleaded under Rule 9(b) "upon information and belief," Plaintiff has altogether failed to articulate a statement of facts upon which its belief is based.  *DiVittorio*, 822 F.2d at 1247; *see Shaffer Smith, 2424, LLC v. Foster*, 168 F. Supp. 3d 654, 659 (S.D.N.Y. 2016) (rejecting Plaintiff's allegations where the pleading failed to explain the "basis for the . . . wholesale 'information and belief' allegations").  Nor has Plaintiff offered any allegations at all as to the nature of Dr. Brill's relationship with the Competitors or Dr. Brill's knowledge of the Competitors' businesses.  Unlike the unwitting shareholder in a derivative action who can, at the very least, connect a purportedly fraudulent statement to a corporation (notwithstanding the internal workings of the corporation), Plaintiff has not set forth any connection between Defendants and the Competitors, or explained a basis for its conspiracy theory.  Accordingly, Plaintiff's allegations "upon information and belief" cannot be credited.

*LLC*, No. 12-cv-7372 (LJL), 2020 WL 5518146, at *84-85 (S.D.N.Y. Sept. 14, 2020).  Plaintiff's

conclusions in this regard are inadequate.  Accordingly, Plaintiff's fraud claims must be

dismissed.

> **b.   Plaintiff's Allegations do not Establish a Fiduciary Relationship to Support a Claim for Constructive Fraud.**

Nor can Plaintiff state a claim for constructive fraud since Plaintiff has failed to

adequately allege any fiduciary relationship with Defendants.  "'Constructive fraud requires

establishing the same elements as actual fraud except that the element of scienter is replaced by a

fiduciary or confidential relationship between the parties.'"  Like actual fraud, allegations behind

a constructive fraud claim must be pleaded with particularity.  *Faktor v. Yahoo! Inc.*, No. 12

CIV. 5220 (RA), 2013 WL 1641180, at *2 (S.D.N.Y. Apr. 16, 2013) (citation omitted).  And

significantly, fiduciary relationships do not exist in the normal course between parties on

opposite sides of commercial transactions, and can be found on only the rarest of occasions.

*Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) "[W]here parties deal

at arm[']s length in a commercial transaction, no relation of confidence or trust sufficient to find

the existence of a fiduciary relationship will arise absent extraordinary circumstances."  *ESI, Inc.

v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 434 (S.D.N.Y. 1998) (internal quotation marks

and citation omitted).

Here, Plaintiff has not and cannot allege a fiduciary relationship since Dr. Brill and

Predictive Health had no relationship with Plaintiff, especially not a relationship of trust.

Plaintiff's conclusory allegations in this regard fall short.  *See Compania Sud–Americana de

Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F. Supp. 411 (S.D.N.Y. 1992) (finding

conclusory statements about the existence of a fiduciary relationship insufficient to establish

such relationship).  As set forth in the Amended Complaint, Defendants worked with and for

4852-8171-0044.1

potential counterparties to a transaction with Plaintiff, and offered them consulting services.  *See* Am. Compl. ¶ 118.  Plaintiff alleges that Dr. Brill came to possess Plaintiff's confidential information, presumably from KKR and Accelmed, but pleads no other facts to show that this created a fiduciary relationship with Plaintiff.  *See id.* ¶¶ 65-66, 119.  And indeed, courts scrutinizing similar situations have found that this is not enough to allege a fiduciary relationship.  *See Faktor*, 2013 WL 1641180 at *3 (The mere conclusion that a party exchanged a business plan does not prove enough trust or confidence to support a finding of a fiduciary relationship).  Without adequately alleging a fiduciary relationship, Plaintiff's constructive fraud claim fails and must be dismissed.

### III.   Plaintiff's Claim for Tortious Interference With Contract Fails to State A Claim Upon Which Relief can be Granted.

With regard to Plaintiff's tortious interference with contract claim, the Amended Complaint contains no facts to support two required elements of such a claim—breach of contract and intentional procurement thereof—and therefore, Plaintiff's tortious interference with contract claim must be dismissed.  Under New York law, the elements of tortious interference with contract are "(1) the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (internal quotation marks and citation omitted).  "In addition, the plaintiff must assert, with respect to each defendant, that the defendant's actions were the 'but for' cause of the alleged breach—in other words, that there would not have been a breach but for the activities of the defendant."  *Taboola, Inc. v. Ezoic Inc.*, No. 17CIV9909, 2020 WL 1900496, at *7 (S.D.N.Y. Apr. 17, 2020) (citation omitted).  "[T]he law requires some factual specificity in pleading

tortious interference." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 405 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) (citation omitted).

### a.   The Amended Complaint Fails to Allege Breach of Contract.

Here, the Amended Complaint has not and cannot allege any facts that KKR or Accelmed actually breached their respective term sheets with Plaintiff.  Significantly, a third party's decision to walk away from a project does not constitute a violation of the terms of the contract. *Kirch*, 449 F.3d at 402.  Accordingly, Plaintiff's tortious interference claim cannot be based on KKR or Accelmed deciding not to fund Plaintiff under their respective terms sheets.

Dead set on exacting revenge on Dr. Brill, however, Plaintiff has conjured up a nonsensical theory of breach, according to which KKR and Accelmed breached the confidentiality and use of information provisions of their respective term sheets to the extent Defendants misappropriated confidential information, and this misappropriation is attributable to KKR and Accelmed.  *See* Am. Compl. ¶ 131.  Apart from the fact that the Amended Complaint is devoid of any facts showing that either KKR or Accelmed disclosed confidential information to Defendants, including any specific allegations as to the manner or kind of that information, Plaintiff conflates breach and the procurement thereof.  Since Defendants were not parties to the KKR or Accelmed Term Sheets, Plaintiff's allegations concerning Defendants' conduct are, as a matter of common sense, only relevant to the procurement of breach prong of Plaintiff's tortious interference with contract claim.   And since Plaintiff cannot establish any breach of contract by KKR or Accelmed, its tortious interference with contract claim must be dismissed.

### b.   The Amended Complaint Fails to Allege Intentional Procurement of Breach.

To avoid any doubt as to whether Plaintiff's claim is deficient, it's worth examining whether Plaintiff has adequately alleged intentional procurement of breach.  And indeed, Plaintiff's allegations with respect to intentional procurement fall short.  To allege intentional

4852-8171-0044.1

procurement of a breach, "it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead, the evidence must show that the defendant's objective was to procure such a breach." *Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013); *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, No. 14-CV-7529 (RJS), 2016 WL 5414979, at *5 (S.D.N.Y. Mar. 18, 2016); *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 327 (S.D.N.Y. 2017) ("to satisfy this element, it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff").

Here, Plaintiff alleges that Dr. Brill and Predictive Health intended to delay the financing of Plaintiff by raising issues with Plaintiff's CPT coding practices. *See* Am. Compl. ¶¶ 69, 85. Accordingly, on the allegations contained in the Amended Complaint, Defendants' objective was not to induce a breach of the confidentiality provisions contained in the KKR and Accelmed term sheets. And indeed, it is not enough that conduct constitutes a breach, the plaintiff must allege that the breach was the third party's objective. *High Falls Brewing Co., LLC v. Boston Beer Corp.*, 513 Fed. App'x 12 (2d Cir. 2013) (affirming denial of leave to amend claim of tortious interference because proposed pleading did not show that the target of defendant's conduct was the third party's contractual arrangements with the plaintiff); *Prospect Funding Holdings*, 256 F. Supp. at 327–28. Since the Amended Complaint does not contain any factual allegations that Dr. Brill or Predictive Health intended to induce KKR and Accelmed to unintentionally breach the confidentiality provisions of the term sheets, Plaintiff's tortious interference claim is deficient.[10]

---

[10]   And notably, since the Amended Complaint states that Dr. Brill and Predictive Health acted as agents of KKR and Accelmed respectively, Plaintiff cannot allege that Dr. Brill or Predictive Health intentionally procured breaches by KKR or Accelmed. *See Caithness Long*

21

**IV.    Plaintiff Cannot State a Claim for Tortious Interference with Prospective Economic Advantage Because the Amended Complaint Concedes that Defendants' Purported Conduct was Motivated by Financial Gain.**

Concerning Plaintiff's claim for tortious interference with prospective economic advantage,  the Amended Complaint contains no facts to support an essential element of such a claim— that defendants acted solely out of malice, or used dishonest, unfair, or improper means—and therefore, Plaintiff's cause of action must be dismissed.  "Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" *Kirch*, 449 F.3d at 400 (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003), *certified question answered*, 818 N.E.2d 1100 (N.Y. 2004)).  The third element, which requires that a defendant act with a wrongful purpose or use wrongful means, distinguishes tortious interference with prospective economic advantage from tortious interference with contract.  *See Carvel Corp*, 350 F.3d at 18.  In order to recover on a claim for tortious interference with prospective economic advantage, the plaintiff must show "more culpable conduct on the part of the defendant."  *Carvel Corp*, 818 N.E.2d at 1103  And,

---

*Island II, LLC v. PSEG Long Island LLC*, No. 18-CV-4555, 2019 WL 6043940, at *6 (E.D.N.Y. Sept. 30, 2019) ("an agent is typically not liable for inducing its principal to breach a contract if the agent is acting within the scope of its authority."); *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 88 (S.D.N.Y. 2012) ("Only a stranger to a contract, such as a third party, can be held liable for tortious interference with the contract.").  And the Amended Complaint contains no factual allegations that Dr. Brill or Predictive Health acted outside the scope of their purported agency. Accordingly, they are not third parties to the term sheets for purposes of tortious interference with contract. *See Solow v. Stone*, 994 F. Supp. 173, 182 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998) (granting motion to dismiss tortious interference with contract claim where defendants were agents of the promisor and thus were not independent third parties to the contract at issue).

generally, in this regard, "a defendant's conduct must amount to a crime or an independent tort." *Id.* One exception to this general rule is where the plaintiff can demonstrate that the "defendant engage[d] in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" *Id.* (citation omitted).

Here, Plaintiff has not alleged any criminal conduct on the part of Defendants, or otherwise adequately pleaded any tort by Defendants upon Plaintiff. Accordingly, the only way Plaintiff can establish tortious interference with prospective economic advantage is by alleging that Defendants acted with the sole purpose of harming Plaintiff. *See Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (rejecting tortious interference with prospective economic advantage claim where, among other things, Plaintiff failed to state a claim for fraud—the purported more culpable conduct on the part of defendant). And indeed, Plaintiff alleges—in conclusory fashion—that Defendants acted "with the sole purpose of harming the Plaintiff and/or using wrongful means." Am. Compl. ¶ 124. However, the Amended Complaint alleges that Dr. Brill had a financial arrangement with the Competitors such that it was "in [Dr.] Brill's financial interest to prevent [Plaintiff] from performing as well as it otherwise might have vis-à-vis its competitors." *Id.* ¶ 74. Accordingly, Plaintiff cannot claim that Defendants acted with the sole purpose of inflicting harm on Plaintiff, and therefore Plaintiff cannot avail itself of the exception to the rule that a defendant's conduct must amount to a crime or an independent tort. *See Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16, 30 (N.Y. App. Div. 2009) ("indeed, by plaintiff's own theory of the case, defendants acted with the intent of benefitting themselves."). Therefore, Plaintiff has not stated a claim for tortious interference with prospective economic advantage and Count IV should be dismissed.

4852-8171-0044.1

**V.    Plaintiff Has Failed to State a Claim for Unfair Competition Under New York Law Because the Amended Complaint is Devoid of any Allegations of Defendants Taking or Utilizing Plaintiff's Property.**

Plaintiff's allegations of unfair competition fall short to the extent the Amended Complaint is devoid of any factual allegations that Defendants' misappropriated WATS3D. Under New York law, "[a]n unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982); *ITC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852, 859 (N.Y. 2007). "The essence of the misappropriation theory is not just that the defendant has 'reap[ed] where it has not sown,' but that it has done so in an unethical way and thereby unfairly neutralized a commercial advantage that the plaintiff achieved through 'honest labor.'" *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 308 (N.Y. 2018). Misappropriation claims based on conclusory allegations devoid of plausible factual allegations are not sufficient to state a claim. *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 674–75 (S.D.N.Y. 2016).

Here, the Amended Complaint is devoid of factual allegations of misappropriation. Plaintiff alleges that WATS3D is unique, *see* Am. Compl. ¶¶ 8, 9, but makes no allegations as to what Dr. Brill or Predictive Health took from Plaintiff or how they utilized it, including for the commercial advantage of the Competitors. Plaintiff alleges only that Dr. Brill and Predictive Health had access to "its laboratory procedures, its medical technology, and its clinical registries." *Id.* ¶ 14. Absent further allegations, Plaintiff's conclusory misappropriation claim cannot survive a motion to dismiss. *See Ad Lightning Inc. v. Clean.io, Inc.*, No. 19-CV-7367, 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020) (dismissing claim for misappropriation where

employees had access to plaintiff's information, but no facts were alleged to suggest the employees actually acquired information through improper means).

## VI.    Plaintiff's Tortious Interference Claims are Time Barred.

Plaintiff's tortious interference claims should be dismissed as time barred because, in each case, the three-year statutory period expired before Plaintiff commenced the instant action.[11]  A tortious interference with contract claim is subject to a three-year statute of limitations, and a claim accrues at the time injury is sustained.  *See Rosemeier v. Schenker Int'l, Inc.*, 895 F. Supp. 65, 66 (S.D.N.Y. 1995), citing *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 291-92 (1993)).  A tortious interference with prospective economic advantage claim is subject to a three-year statute of limitations, but a claim accrues "when the defendant performs the action (or inaction) that constitutes the alleged interference."  *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 910 (S.D.N.Y. 2016); *see also Thome*, 890 N.Y.S.2d at 30 (stating that the statutory period "does not commence anew each time the plaintiff is unable to enter into a contract").  Significantly, unlike a claim for fraud, which is subject to the discovery rule—under which a plaintiff's cause of action accrues at the time plaintiff possesses knowledge of facts from which a fraud could have been discovered with reasonable diligence—no discovery rule applies to tortious interference claims.  *See Sucher v. Goldman Sachs Grp., Inc.*, Index No. 653803/2014, 2016 N.Y. Misc. LEXIS 1117, at *10 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 7, 2016) ("such an extension generally applies only to fraud claims, and not to causes of action sounding in tortious interference with contract or business opportunity"); *Monex Fin. Servs. Ltd. v. Dynamic Currency Conversion, Inc.*, 859 N.Y.S.2d 904 (Table), 2008 WL 880209, at *2 (N.Y.

---

[11]        "A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as opposed to under Rule 12(b)(1)."  *Nghiem v. U.S. Dep't of Veterans Affairs*, 451 F. Supp. 2d 599, 602 (S.D.N.Y. 2006), *aff'd*, 323 F. App'x 16 (2d Cir. 2009).

Sup. Ct. 2008), *aff'd as modified*, 878 N.Y.S.2d 432 (N.Y. App. Div. 2009) (explaining that tortious interference with contract is "governed by a three-year statute of limitations and is not a continuing tort" and that a "claim accrues when the injury is sustained, not discovered").

Here, with regard to Plaintiff's tortious interference with contract claim, on the allegations set forth in the Amended Complaint, Plaintiff first sustained damages due to Dr. Brill's and Predictive Health's purported interfering conduct when KKR and Accelmed opted not to fund Plaintiff in November and December 2016.  *See* Am. Compl. ¶¶ 83-86.  At that time, according to Plaintiff, Plaintiff was forced to entertain and negotiate lower valuations and less favorable financing arrangements.  And, as relevant here, Plaintiff did not commence the instant action until December 13, 2019.  (Defendants were not named until Plaintiff filed the Amended Complaint on September 24, 2020.)  Accordingly, more than three years elapsed from the time Plaintiff first purportedly sustained damages due to Dr. Brill's and Predictive Health's purported interfering conduct.[12]  And therefore, Plaintiff's tortious interference with contract claim is time barred and must be dismissed.[13]

With regard to Plaintiff's tortious interference with prospective economic advantage claim, on the allegations set forth in the Amended Complaint, the interfering conduct first

---

[12]    To the extent Plaintiff's tortious interference with contract claim is based on KKR and Accelmed providing Dr. Brill and KKR with confidential information, then even more time elapsed before the filing of the Amended Complaint, since, on Plaintiff's allegations, Dr. Brill and Predictive Health reviewed such material and rendered conclusions in connection therewith prior to KKR and Accelmed deciding to walk away from their respective deals.

[13]    Plaintiff is not entitled to any equitable tolling since the Amended Complaint does not show that (1) Plaintiff has been pursuing its rights diligently, or (2) that some extraordinary circumstance stood in its way and prevented timely filing.  *See Menominee Indian Tribe v. U.S.*, 136 S.Ct. 750, 755-56 (2016).  And, in any event, federal courts are reluctant to apply equitable tolling to state law claims.  *See In re Signature Apparel Grp.*, 577 B.R. 54, 84 (Bankr. S.D.N.Y 2017).  Here, the allegations in the Amended Complaint do not warrant deviation from this well-accepted norm.

4852-8171-0044.1

occurred when Dr. Brill purportedly acted to delay the KKR and Accelmed deals in 2015 and

2016.  As a matter of common sense, this occurred before Plaintiff could have sustained any

damages resulting from Defendants' conduct.   Accordingly, the three-year statute of limitations

on Plaintiff's tortious interference with prospective economic advantage claim ran before

plaintiff commenced the instant action.  And therefore, Plaintiff's tortious interference with

prospective economic advantage claim must be dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiff's Amended Complaint should be dismissed with

prejudice, including because leave to amend would be futile, and the Court should grant any

other relief it deems necessary.

Dated: February 12, 2021
       New York, New York

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

By: */s/ Andrew L. Hurst*
Andrew L. Hurst
901 K Street, N.W., Suite 900
Washington, D.C. 20001
Tel: (202) 508-3400
Email: ahurst@bakerdonelson.com

FOLEY & LARDNER LLP

Robert A. Scher
Christopher A. DeGennaro
90 Park Avenue
New York, NY 10016-1314
Tel: (212) 682-7474
Email: rscher@foley.com
       cdegennaro@foley.com

*Attorneys for Defendants*
*Joel V. Brill, M.D. and*
*Predictive Health, LLC*

27

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that this document filed through the CM/ECF system on February 12, 2021, and was served via CM/ECF upon the following counsel of record:

/s/ *Andrew L. Hurst*
Andrew L. Hurst

28