UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
RED MOUNTAIN MEDICAL HOLDINGS,
INC. f/k/a CDx DIAGNOSTICS,
INC.,

             Plaintiff,

     - against –

JOEL V. BRILL M.D. and
PREDICTIVE HEALTH, LLC,

          Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

20 Civ. 2652 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This is the second opinion by this Court evaluating Red Mountain Medical Holdings, Inc.'s, f/k/a CDX Diagnostics ("Red Mountain" or "plaintiff") allegations that Dr. Joel Brill ("Brill", collectively with his consulting company Predictive Health, LLC "defendants") sabotaged a potential financing with the private equity firm, Kohlberg Kravis Roberts & Co., L.P. ("KKR"). While Red Mountain's First Amended Complaint contained numerous causes of action, the Court's first opinion dismissed all except one. See Mem. & Order, Sept. 27, 2021 ("Mem. & Order"), ECF No. 37. Specifically, the Court dismissed the claims that Brill breached the conflict and confidentiality provisions of his contracts with KKR and Accelmed, another potential investor, because Red Mountain was not a party to the contract and not a

-1-

third-party beneficiary.  See Mem. & Order, at 8, ECF No. 37.  The Court also dismissed actual and constructive fraud claims that Brill falsely misrepresented his conflict to Accelmed and misrepresented to Accelmed and KKR that Red Mountain employed improper billing methods.  Id. at 19-20.  In addition, the Court dismissed the claims that Brill tortiously interfered with Red Mountain's transactions with both KKR and Accelmed, because the plaintiff failed to bring the claims within the statute of limitations.  Id. at 38.  And finally, the Court dismissed the claim for unfair competition that alleged that Brill misrepresented Red Mountain's information to the advantage of Red Mountain's competitors in order to deprive Red Mountain from obtaining acceptance by the standard practice guidelines.  Id. at 43.

At this stage, the only remaining claim is one of "actual fraud for Brill's alleged misrepresentation about not having a conflict of interest with respect to the KKR deal."  Id. at 20. This claim centers on the allegation that Brill was conflicted at the time of his work with KKR due to his relationship with two competitors of Red Mountain, NinePoint Medical, Inc. ("NinePoint") and Mauna Kea Technologies ("Mauna Kea"), and that because of those relationships, Brill falsely told KKR that he was not conflicted with the intent to be hired by KKR and to sabotage the financing.

Red Mountain asserts that if it had known of Brill's alleged conflict at the time, it would not have allowed Brill to participate in KKR's due diligence and the deal with KKR would have closed.  See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Br.") at 1, ECF No. 61.  Specifically, Red Mountain argues that Brill made two fraudulent statements:  (1) that he falsely told KKR he was not conflicted by signing the engagement letter with KKR that contained a conflict provision; and (2) that he falsely told Ali Satvat, a banker at KKR, in August 2015 that he was not conflicted. Defendants now bring a motion for summary judgment on this remaining claim.  Oral argument was held on January 24, 2023.[1]

Contrary to the characterization of this Court's September 27, 2021 decision by plaintiff, this Court's first opinion simply upheld this singular claim of fraud as a matter of pleading.[2]  See Mem. & Order at 24-26.  However, with discovery

---

[1] Brill filed a pre-motion letter seeking leave to file a motion for summary judgment on May 20, 2022.  See ECF No. 49.  On May 25, 2022, Red Mountain filed a pre-motion letter opposing Brill's motion.  See ECF No. 50.  The Court held a pre-motion conference on June 13, 2022, in which it granted leave to file the motion for summary judgment.  On July 25, 2022, Brill filed his motion for summary judgment.  See ECF No. 57.  On August 31, 2022, Red Mountain filed its opposition to Dr. Brill's motion for summary judgment.  See ECF No. 63.  The motions were fully briefed on September 20, 2022.  See ECF No. 67.

[2] With concerning frequency, plaintiff misstates or overstates this Court's ruling in its first opinion.  Plaintiff's counsel knows better than to endeavor to convert a ruling on a motion to dismiss that upholds the adequacy of a pleading with a determination on the merits.  Even if portions of plaintiff's brief were simply an exercise in hyperbole, it is, at a minimum, a fruitless one when addressing the author of the first opinion.

complete and a motion for summary judgment before the Court, plaintiff must actually support its claim of fraud.  For the reasons stated below, the plaintiff has failed to do so and defendants' motion for summary judgment is granted.

## BACKGROUND

### I.   Factual Background[3]

Given the Court's prior opinion, we assume familiarity with the factual background of the case.  As described therein, Brill was hired as a consultant by KKR to assist KKR in evaluating a potential financing of Red Mountain.  KKR specifically hired Brill for his expertise and experience in gastroenterology and diagnostics.  Def. 56.1 ¶ 24.  On May 19, 2015, Brill signed an engagement letter with KKR, which contained a conflict provision.  Def. 56.1 ¶ 28.  The provision stated that during the engagement with KKR, Brill "shall not perform any services contemplated by or similar to those contemplated by this agreement to any third party concerning any investment in a Target Company."  Engagement Letter

---

[3] The following facts are drawn primarily from the parties' Rule 56.1 Statements and the documents submitted with each party's briefings.  Both parties submitted a Rule 56.1 Statement of Material Facts in support of their motions for summary judgment.  <u>See</u> Def. Local Rule 56.1 Statement ("Def. 56.1"), ECF No. 58; Pl. Local Rule 56.1 Statement ("Pl. 56.1"), ECF No. 64.  Both parties also submitted responses to each other's 56.1 Statements.  <u>See</u> Def. Response to Pl. Local 56.1 Statement, ECF No. 71; Pl. Response to Def. Local Rule 56.1 Statement, ECF No. 64 ("Pl. Reply 56.1"); Def. Rebuttal to Pl. Response to Def. Local Rule 56.1 Statement, ECF No. 69.  Where the Court relies on facts drawn from any of the 56.1 Statements, it has done so because the evidence in the record supports the statements, no rule of evidence bars admission, and the opposing party has not disputed the facts or has not done so with citations to admissible evidence.

4(c), ECF No. 50-15.  Additionally, Brill had to inform KKR "if an engagement on behalf of another client of the Consultant would reasonably be expected to (i) give rise to a conflict of interest in respect of the Consultant's services for KKR or (ii) result in the release of trade secrets or other proprietary or confidential information relating to the Project or KKR."  Engagement Letter 4(b), ECF No. 50-15.  KKR sent Brill the draft engagement letter. Def. 56.1 ¶ 25.  Plaintiff does not argue that Brill drafted or edited the conflict provision of the engagement letter.  Pl. Reply 56.1 ¶ 27.

Moreover, the engagement letter was solely between KKR and Brill.  Neither party suggests that the agreement was signed by or sent to Red Mountain.  In fact, Red Mountain is not even identified by name in the engagement letter.  Def. 56.1 ¶ 30; see Engagement Letter, ECF 50-15.  In its prior opinion, the Court found that this agreement was for the sole benefit of KKR and that Red Mountain was not an intended beneficiary.  Mem. & Order at 12-13.

Brill was not the only expert hired by KKR as part of its due diligence process.  KKR hired multiple consultants and law firms to evaluate various aspects of Red Mountain's business, including its regulatory compliance, intellectual property, accounting methods, and reimbursement practices.  Def. 56.1 ¶ 19.  And, when Brill raised concerns about Red Mountain's use of a particular CPT

code, both KKR and Red Mountain hired several additional experts.[4]

After Brill had already provided his opinions to KKR, Dr. Mark Rutenberg, the Chairman and Founder of Red Mountain, became concerned about Brill's objectivity. Def. 56.1 ¶ 62; Pl. 56.1 ¶ 179. Specifically, at this point, Dr. Rutenberg believed that Brill was conflicted because he had a political agenda to not deprive gastroenterologists of their share of reimbursements.[5] Id. Dr. Rutenberg believed it was this political agenda that motivated Brill to question Red Mountain's use of a particular CPT code. Id.

On August 31, 2015, Dr. Rutenberg raised his concern via email to Ali Satvat, one of the lead bankers at KKR. Def. Br. ¶ 60. Mr. Satvat then relayed Dr. Rutenberg's concerns to Brill, and Brill reassured Mr. Satvat that he could render an objective, non-biased opinion. Pl. 56.1 ¶ 181. Mr. Satvat then communicated this to Dr. Rutenberg. Pl. 56.1 ¶ 182. Brill did not communicate directly with Red Mountain or Dr. Rutenberg about these concerns. The record does not contain the precise statements that were made

---

[4] Specifically, to support plaintiff's position, Red Mountain provided to KKR an opinion letter from Troy A. Barsky, Def. 56.1 ¶ 52, and a report prepared by Dr. Charles Root of Code Map, Def. 56.1 ¶ 54. KKR also consulted Reimbursement Principles, Inc. ("RPI") and the Berkeley Research Group. Def. 56.1 ¶¶ 55, 67. Plaintiff, however, argues that RPI was not independent as Brill contacted them prior to their assessment. Pl. Br. at 22.

[5] This concern regarding Brill's objectivity is different than that alleged in the complaint and the subject of the fraud claim.

by Brill to Mr. Satvat and by Mr. Satvat to Dr. Rutenberg.  In his deposition, Ali Satvat stated:  "I believe we did share that [Brill said he could be objective].  There was a dialogue back and forth between myself and Dr. Rutenberg on this topic at the time." Deposition of Ali Satvat, April 28, 2022 ("Satvat Tr.") 72:5-11, ECF No. 59-3.

After this conversation, KKR did not have further communications with Brill regarding the Red Mountain transaction, although Brill did continue to serve as a consultant for KKR on other projects.  Def. 56.1 ¶¶ 74-76.  In fact, both parties agree that, by the end of November 2015, KKR had not spoken to Brill in over four months.  Pl. 56.1 ¶ 189; Def. 56.1 ¶69.  From the Rule 56.1 statements, it does not appear that Brill was involved in diligence or received documents after the August 2015 conversation.

After KKR had not moved forward with the transaction by March 2016, Red Mountain was able to obtain alternative financing from another investor.  Def. 56.1 ¶¶ 70, 73.  And, in August 2019, Red Mountain's test was adopted into the Standard of Practice Guideline by the American Society of Gastrointestinal Endoscopy.  Pl. 56.1 ¶ 101.

Red Mountain claims to have learned years later of Brill's real "conflict," which is the predicate of the claim of fraud

-7-

before us.  Pl. 56.1 ¶ 195.  In 2018, Dr. Rutenberg learned that Brill had done work for two companies, Mauna Kea and NinePoint. These companies were developing approaches for detecting dysplasia and esophageal precancer, the same cancer Red Mountain's technology also sought to identify.  Pl. 56.1 ¶ 102.  While Red Mountain's technology involved identifying which cells to biopsy, NinePoint's and Mauna Kea's technology used non-invasive optical imaging.  Pl. 56.1 ¶¶ 103, 105.  In his role as CPT advisor to the American Gastroenterological Association, Brill had years earlier assisted both companies in applying for CPT codes 43206 and 43252 concerning "confocal imaging," the type of optical imaging used by NinePoint and Mauna Kea.  Pl. 56.1 ¶ 109.  Those codes were approved by the CPT Panel in 2013.[6]  Pl. 56.1 ¶ 110.  The record indicates that Brill consulted with NinePoint from 2011 to 2012, years prior to his work with KKR, and he consulted with Mauna Kea intermittently from 2013 to 2017 regarding strategies to approach commercial payers and obtain coverage for CPT codes.  Def. 56.1 ¶ 89; Pl. 56.1 ¶ 125.  Brill did not have an ownership interest in either company and simply was paid an hourly rate for his consulting.[7]  Def. 56.1 ¶¶ 82-83, 93-94.

---

[6] These CPT codes are different from the CPT codes used by Red Mountain for its WATS3D technology (i.e., 88104, 88305, 88313, and 88361).  See Ex. 7 to Declaration of Christopher DeGennaro at BRILL0000348, ECF No. 59-7.

[7] Red Mountain speculates that Brill must have been paid more than an hourly rate based on an alleged conflict in two depositions.  Pl. 56.1 Response ¶ 82,

## STANDARD OF REVIEW

The law applicable to defendants' motion for summary judgment is well-established. Summary judgment is properly granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," as well as the basis for any absence of material fact in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In "moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant must satisfy this burden by pointing to the absence of evidence to support an essential element of the non-moving party's claim. Gummo v. Vill. of Depew, N.Y., 75 F.3d 98, 107 (2d Cir. 1996). Courts must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."

---

93. Plaintiff's suggestion misreads the deposition transcripts in an effort to create a conflict where none exists and then attempts to create an issue of fact through pure speculation. There is no evidence in the record to suggest that Brill was paid anything other than his hourly rate.

Gilman v. Marsh & McLennan Cos., Inc., 826 F.3d 69, 73 (2d Cir. 2016).

If the moving party makes a showing that it is entitled to summary judgment, "[t]hen the onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). The non-moving party "may not merely rest on the allegations or denials of his pleading; rather his response . . . must set forth 'specific facts' demonstrating there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A "scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252. "If no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate." Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 710 (2d Cir. 1991).

## DISCUSSION

As noted earlier, plaintiff's remaining claim of fraud involves two statements made by Brill to a third party, KKR. Under New York law, the elements of fraud are: (1) a material misrepresentation or omission of fact; (2) made by a defendant with knowledge of its falsity; (3) with an intent to defraud;

(4) reasonable reliance on the part of the plaintiff; and (5) resulting damages.  Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) (citation omitted).  At the summary judgment stage, the plaintiff must offer sufficient evidence such that a reasonable jury could find that each of the elements is met by clear and convincing evidence.  Laugh Factory, Inc. v. Basciano, 608 F. Supp. 2d 549, 558 (S.D.N.Y. 2009).

However, when the fraudulent statements are not communicated directly to the plaintiff and instead are made to a third party, as is the case here, the plaintiff also needs to show that the false statements were made to the third party "with the intent that [they] be communicated to the plaintiff and that the plaintiff rely on [them]."  Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 828 (N.Y. Ct. App. 2016) (emphasis added).  Moreover, the third party needs to act "as a conduit to relay the false statement to the plaintiff, who then relied on it to his detriment." Id.

Here, Red Mountain argues that Brill falsely claimed he was not conflicted in (1) the conflict provision of the engagement letter and (2) in statements made to Ali Satvat at KKR in August 2015.  Even assuming that Brill was in fact "conflicted," neither of these statements can support a claim of fraud, and therefore

summary judgment is appropriate.[8]

## I.   Statement in the Conflict Provision

Red Mountain first claims that Brill fraudulently stated he was not conflicted in the engagement letter with KKR.   However, plaintiff cannot establish that the statement in the engagement

---

[8] Even though it is not necessary to reach the merits of the assertion that Brill was in fact conflicted, it is worth noting that the facts, as developed through discovery, do not support the allegations in the complaint.   At oral arguments, plaintiff's counsel stated:

> I would have loved it if discovery had shown that Dr. Brill had an ownership interest in NinePoint or Mauna Kea or its stock options or they had paid him directly to specifically do this.   I admit that discovery did not show this, but what discovery did show is that he hitched his wagon to those two companies.
> Oral Argument Tr., Jan. 24, 2023, 7:23-8:3.

Without any evidence of a financial interest tying Brill to these alleged competitors, the Court is unsure what incentive Brill would have had to sabotage the potential financing with KKR.   Nonetheless, plaintiff argues that Brill "hitched his wagon" to the companies because "his reputation hinged on getting his two clients into the guidelines." Id. at 10:2-6.   But, the facts presented to this Court do not support this speculation.   The parties do not dispute that Brill only worked for NinePoint from 2011 to 2012.   Def. 56.1 ¶ 89.   Thus, his relationship with NinePoint was finished years before his work with KKR.   The facts related to his relationship with Mauna Kea fare only slightly better.   At most, Brill worked intermittently for Mauna Kea from 2013 to 2017 "in connection with strategies to approach commercial payors and how to obtain coverage for CPT codes." Def. 56.1 ¶ 78.   As discussed previously, these were different CPT codes than the ones used by Red Mountain.   See supra 8 n.6.   The claim that Brill worked to get Mauna Kea into the guidelines is only weakly supported (and misquoted) by plaintiff.   When plaintiff asked Mr. Loiseau of Mauna Kea whether Brill advised them on getting their technology into the guidelines, all he said was that:

> We probably had conversations about the adoption of our technology. Obviously working on reimbursement is all about the adoption of the technology.   And we discussed the possibility of being, I guess, one day included in the guidelines, but this is not why we retained Dr. Brill.   Again, we retained him for reimbursement services.
> Deposition of Alexandre Sacha Loiseau, Apr. 27, 2022, 43:12-20, ECF No.59-4.

While it is clear that plaintiff hoped discovery would reveal some nefarious arrangement, it did not.   The Court is therefore surprised at plaintiff's continued insistence on disparaging Brill, despite the real implications such assertions could -- and likely have had -- on Brill's reputation in the field.

letter was false or that Brill signed the engagement letter with the intent to communicate with Red Mountain.

First, fraud requires a false statement. Defendants argue that the engagement letter does not contain any false statements, as the conflicts provision "had nothing to do with any conflicts of interest with respect to the Plaintiff." Reply Mem. in Further Support of Def. Motion for Summary Judgment ("Def. Reply") at 4-5, ECF No. 67. Through the conflict provision, Brill promised not to "perform any services contemplated by or similar to those contemplated by this agreement to any third party concerning any investment in a Target Company," and to inform KKR if another engagement would "reasonably be expected to (i) give rise to a conflict of interest in respect of the Consultant's services for KKR or (ii) result in the release of trade secrets or other proprietary or confidential information relating to the Project or KKR." Engagement Letter 4(b)-(c), ECF 50-15. The Court previously held that under the contract Brill could not advise <u>KKR's</u> competitors, not Red Mountain's, about similar investment opportunities and that KKR was the only party that could waive such conflict. Mem. & Order at 13. Here, it is an undisputed that Brill did not work for a competitor of KKR or release trade secrets. Therefore, summary judgment is appropriate on the fraud claim premised on the conflict provision in the engagement letter.

Even assuming *arguendo* that the conflict provision could be read to include the type of conflict with Red Mountain's competitors that the plaintiff suggests, defendants are entitled to summary judgment since the plaintiff cannot establish that Brill signed the engagement letter with the intent to communicate to Red Mountain that he was non-conflicted.  When a statement is made to a third party, the plaintiff needs to show that the statement was made "with the intent that it be communicated to the plaintiff and that the plaintiff rely on it."  Pasternack, 27 N.Y.3d at 828.  Once again, the Court has previously ruled that the engagement letter and conflict provision were solely for the benefit of KKR.  Mem. & Order, at 12-13.  Red Mountain is not a party to this agreement, and dispositively, Red Mountain is not even identified as the target company in the engagement letter.[9]  See Engagement Letter, ECF No. 50-15.  Thus, defendants have made a showing that Brill did not sign the engagement letter with the intent to communicate to Red Mountain that he was not conflicted.

The burden now shifts to the plaintiff to present evidence sufficient to establish this intent.  Instead of pointing to any

---

[9] The record does not clearly establish that Brill even knew the identity of KKR's target prior to signing the engagement letter.  In his deposition, Brill testified that the "the target would have been disclosed" "only after I had executed the non-disclosure agreement."  Deposition of Joel Brill, Mar. 24, 2022 ("Brill Tr."), 90:1-24, ECF No. 59-1.  While Brill had been sent the engagement letter on April 6, 2016, Def. 56.1 ¶ 25, and ultimately signed it on May 19, 2015, id. ¶ 28, it appears he only was sent the non-disclosure agreement on May 19, 2015, Pl. 56.1 ¶ 139.

evidence indicating Brill's intent to communicate with Red Mountain at the time he signed the engagement letter, plaintiff simply states that "it strains credibility to suggest that Brill did not know that before Red Mountain allowed Brill to participate in due diligence, it would have sought confirmation from KKR that Brill had signed these documents" and that "Brill knew if he had not signed these documents he would 'not have had access' to Red Mountain otherwise."  Pl. Br. at 20-21.  However, "[c]onclusory allegations will not suffice to create a genuine issue."  <u>Delaware & Hudson Ry. Co. v. Consol. Rail Corp.</u>, 902 F.2d 174, 178 (2d Cir. 1990).[10]  Therefore, the Court grants defendants' motion for summary judgment as it related to the statement in the engagement letter.

## II.  Statements to Ali Satvat in August 2015

Red Mountain next focuses on statements between Brill and Ali Satvat at KKR.  Once again, summary judgment is appropriate, because the record does not establish the essential elements that Mr. Satvat acted as a mere conduit or that Red Mountain

---

[10] Plaintiff argues that there is a triable issue as to Brill's fraudulent intent generally.  <u>See</u> Pl. Br. at 21.  Specifically, plaintiff argues that Brill demonstrated his intent to defraud through his "vociferous position" against the use of particular pathology CPT codes and his interference with RPI.  <u>Id.</u> at 22.  Even if this were proven, these facts do not raise an issue of material fact as to Brill's intent to communicate to Red Mountain that he was non-conflicted in signing the engagement letter.  Since this essential element of a third-party fraud claim is missing, the Court need not resolve whether these facts create a genuine issue of material fact regarding Brill's intent to defraud Red Mountain.

detrimentally relied on this conversation.

First, defendants argue that summary judgment is appropriate, because the alleged fraudulent statement was made to a third party and a statement made to a third party, not directly to the plaintiff, only constitutes fraud if "the third party acted as a mere conduit in passing on the misrepresentations to the plaintiff." Loreley Financing (Jersey) No. 3 Limited v. Wells Fargo Securities, 13 F.4th 247, 260 (2d Cir. 2021) (citing Pasternack, 27 N.Y.3d at 828-829). While there is limited case law outlining the bounds of what it means to act as a mere conduit, the Second Circuit has held that the third party needs to "act[] as a scrivener by transcribing and distributing a defendant's representations without filtering." Loreley, 13 F.4th at 260. In Loreley, the Second Circuit found that summary judgment was appropriate as there was no reliance on the defendant's statements to the plaintiff's investment adviser, because the adviser did not give the plaintiff the offering materials created by the defendant that contained the alleged false statements. Id. at 260-261. The fact that the advisor summarized the materials was not sufficient. Third-party reliance is limited when the defendant's misrepresentations are "filtered through a third party's own process of evaluation" or a third party "plays a significant role in choosing what information it wanted to receive and, in addition,

what it deemed worthy of communicating." Id. at 260.

Here, the defendants argue there is no evidence demonstrating that Ali Satvat acted as a mere conduit.  A defendant satisfies its burden for summary judgment by "pointing out the absence of evidence to support non-movant's claim." Citizens Bank, 927 F.2d at 710.  Even with discovery, no one knows precisely what was said in the conversation between Brill and Mr. Satvat and in the conversation between Dr. Rutenberg by Mr. Satvat.  Both parties rely on the deposition of Mr. Satvat, in which he described the statements made in the August 2015 conversations.  Mr. Satvat stated that the conversations were spurred by Dr. Rutenberg's concern that Brill had a political agenda.  Mr. Satvat testified that he did "not recall specifically" what was asked of Brill, but that it "went to the question of . . . could [Brill] be objective." Satvat Tr. 55:17-56:1.  When asked about Brill's response, Mr. Satvat stated:  "I don't recall the specifics.  But at a higher level, his view was he could be objective."  Satvat Tr. 56:3-9. According to Mr. Satvat, Brill explained that he could be objective because of his "experience in the space probably, and the fact that he advised multiple people on multiple topics . . . he was advising us the way he had advised others." Satvat Tr. 56:10-18.

In his testimony, Mr. Satvat does not state that he communicated back Brill's statements verbatim.  Instead, when

asked what he conveyed to Dr. Rutenberg, Mr. Satvat testified "I believe we did share that [Brill said he could be objective and] [t]here was a dialogue back and forth" between himself and Dr. Rutenberg. Satvat Tr. 72:5-11. Mr. Satvat, however, cannot recall "what explanations [he] would have provided at that time or not provided." Satvat Tr. 72:12-20. It is clear from Mr. Satvat's testimony that he filtered the information from Brill and decided what "was worthy of communicating" to Dr. Rutenberg. Loreley, 13 F.4th at 260. Thus, the Second Circuit decision in Loreley is controlling.

Plaintiff cannot create a disputed issue of material fact based on the record. Plaintiff offers no evidence to contradict Mr. Satvat's account. In its Rule 56.1 statement, plaintiff relies on precisely the same statements of Mr. Satvat quoted above, which again merely state that Mr. Satvat conveyed that Brill said he could be "objective" and "[ t]here was a dialogue back and forth," but that Mr. Satvat did not "recall what explanations [he] would have provided at that time or not provided." Pl. 56.1 ¶¶ 181-182; Satvat Tr. 56:3-18, 72:5-20. Their own witness, Dr. Rutenberg, who had the most incentive to remember what was said, as he claims to have relied on these precise statements, did not testify about what was communicated to him. Based on this evidence, plaintiff has not established by clear and convincing evidence that Satvat

simply acted as a conduit, and, thus, summary judgment is appropriate.

Regardless, even more broadly, plaintiff cannot establish that Red Mountain relied on Brill's statements to Mr. Satvat in August 2015. Defendants point out that at the time these statements were made, "Brill had already been retained by KKR and rendered his assessment of Plaintiff by the time Dr. Rutenberg raised any concerns about Dr. Brill's objectivity to Satvat." Def. Br. at 19. The record supports defendants' position. Brill provided his opinions to KKR in June and July 2015, well before the conversation with Mr. Satvat about Brill's objectivity. Def. 56.1 ¶¶ 42-47.

As defendants have made a prima facie showing on this timeline, the plaintiff must show that there is evidence to establish its reliance. Despite the defendants' demonstration that Brill's services on this transaction had concluded before the conversation with Mr. Satvat, Red Mountain reiterates its claim that if it had known that Brill was conflicted, it would not have allowed him to participate in diligence, and, by allowing him to participate, Brill was able to sour the deal. Pl. Br. at 1. However, there is no indication that Brill was even consulted by KKR after the August 2015 conversation. In their counterstatement of facts, plaintiff states that "by the end of November 2015, KKR

had not spoken to Brill in over four months." Pl. 56.1 ¶ 189.[11] Thus, even if Mr. Satvat had served as a third-party conduit, Red Mountain could not establish reliance by Red Mountain, since Red Mountain could not have excluded Brill from the diligence process that he was no longer participating in. Any other claim that Red Mountain would have generally held up the diligence in response to this information is speculative. "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiff fails to establish a dispute of material fact that would support a claim for fraud. Summary judgment is granted as to this statement as well.

## CONCLUSION

Accordingly, for the reasons stated above, we grant defendant's motion for summary judgment. The Clerk of the Court is respectfully directed to terminate the motion pending at ECF No. 56, enter judgment for the defendants, and close the case.

**SO ORDERED.**

---

[11] At oral arguments, plaintiff's counsel stated that he believed Brill was still being consulted by KKR through December 2015. However, counsel's statement is inconsistent with the Rule 56.1 Statement cited above.

-20-

Dated:     New York, New York
           March 2, 2023

           NAOMI REICE BUCHWALD
           UNITED STATES DISTRICT JUDGE